Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

## for the

Southern District of New York    2017 OCT 31   AM 10: 37

### CIVIL RIGHTS DIVISION

|  |  |
|---|---|
| Robert Derek Losch Sr. | Case No. 17CV867 |
| _____ | (to be filled in by the Clerk's Office) |
| **Plaintiff(s)** | |
| *(Write the full name of each plaintiff who is filing this complaint.* | |
| *If the names of all the plaintiffs cannot fit in the space above,* | |
| *please write "see attached" in the space and attach an additional* | |
| *page with the full list of names.)* | |
| -v- | |
| | |
| — See Attached — | |
| _____ | |
| **Defendant(s)** | |
| *(Write the full name of each defendant who is being sued.  If the* | |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of defendants.  Do not include addresses here.)* | |

DOC #_____ 10-31-17

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
## (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

-See Attached
Pg. 1 of 11
Defendants

Robert Derek Lurch Sr.

-against-

The City of New York, MTA, Police Officer Interdonati,
Police Officer Tolly, Police Officer Tirade, Police Officer Torres

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

I.      **The Parties to This Complaint**

A.      **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Robert Derek Lorch Jr. |
| All other names by which you have been known: | |
| ID Number | 16A3468 |
| Current Institution | Mid-State Correctional Facility |
| Address | P.O. Box 2500 |
| | Marcy                    NY              13403 |
| | City                      State           Zip Code |

B.      **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
| | |
|---|---|
| Name | The City of New York |
| Job or Title *(if known)* | |
| Shield Number | |
| Employer | |
| Address | |
| | City                      State           Zip Code |

☐ Individual capacity   ☑ Official capacity

Defendant No. 2
| | |
|---|---|
| Name | MTA |
| Job or Title *(if known)* | |
| Shield Number | |
| Employer | |
| Address | |
| | City                      State           Zip Code |

☐ Individual capacity   ☑ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

> Defendant No. 3
>> Name _-see Attached-_
>> Job or Title *(if known)*
>> Shield Number
>> Employer
>> Address

|  |  |  |
|---|---|---|
| City | State | Zip Code |

☐ Individual capacity     ☐ Official capacity

> Defendant No. 4
>> Name _-see Attached-_
>> Job or Title *(if known)*
>> Shield Number
>> Employer
>> Address

|  |  |  |
|---|---|---|
| City | State | Zip Code |

☐ Individual capacity     ☐ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

-See Attached-          -see Attached-

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

— See Attached —

Pg. 3 of 11

I. The Parties to this complaint

B. The Defendant (s)

Defendant No. 3

Name: Joseph Interdonati

Job or Title: Police Officer (MTA)

Shield #: 2481

Employer: MTA

Address: 357 Madison ave / New york, NY

Defendant No. 4

Name: Tolly

Job or Title: Police Officer (MTA)

Shield #: 2090

Employer: MTA

Address: 347 Medison ave / New york, NY

Defendant No. 5

Name: Tirade

Job or Title: Police Officer (MTA)

Shield: 2512

Employer: MTA

Address: 347 Madison ave / New York, NY

Defendant No. 6

Name: Torres

Job or Title: Police Officer (MTA)

Shield: 2585

Employer: MTA

Address: 347 Madison ave / New York, NY

—See Attached—

Pg. 3 of 11

II. Basis For Jurisdiction
    B.

Claims Chart

| Causes of action | Defendants | Type of claim |
|---|---|---|
| ① Excessive Force | ① MTA <br> ② MTA P.O. Interdonati <br> ③ MTA P.O. Tully | 42 U.S.C. 1983 |
| ② Equal Protection | ① MTA <br> ② MTA P.O. Interdonati <br> ③ MTA P.O. Tully | 42 U.S.C. 1983 |
| ③ Malicious abuse of Process | ① MTA <br> ② MTA P.O. Interdonati <br> ③ MTA P.O. Tully | 42 U.S.C. 1983 |
| ④ Malicious Prosecution | ① MTA <br> ② The City of NewYork <br> ③ MTA P.O. Interdonati <br> ④ MTA P.O. Tully | 42 U.S.C. 1983 |
| ⑤ False arrest | ① MTA <br> ② MTA P.O. Interdonati <br> ③ MTA P.O. Tully | 42 U.S.C. 1983 |
| ⑥ Failure to Protect | ① MTA <br> ② MTA P.O.'S Tully, Tirado, Torres, Interdonati | 42 U.S.C. 1983 |

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

*-See Attached-*

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☑ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

Inside Penn Station at 1 Penn Plaza (LIrr weiting area)/New York, NY

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

N/A

- See Attached -

Pg. 4 of 11

II. Bass For Jurisdiction

    D.

<u>Acting under color of State Law</u>

Under 42 USC § 1983, a party may pursue a civil claim For damages and Injunctive relief against any person who acts under color of State Law to deprive that party of a constitutional right (See Wilner v. Village of Roslyn, 99 A.D.3d 702, 952 N.Y.S.2d 71; Holland v. City of Poughkeepsie, 90 A.D.3d 841, 846, 935 N.Y.S.2d 583).

The Statue Provides that "[e]very person who, under color of any Statue, ordinance, regulation, custom, or usage... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the constitution and Laws, Shall be liable to the party Injured" (42 USC § 1983, See Eckardt v. City of White plains, 87 A.D.3d at 1051-1052, 930 N.Y.S.2d 22; Hudson Val. Mat., Inc., v. Town of cortlandt, 79 A.D.3d 700, 703, 912 N.Y.S.2d 623).

To Prevail on a claim of a civil rights violation under 42 U.S.C. § 1983, a Plaintiff must demonstrate that the defendant was acting "under color of State Law at the time of the acts In question (See, Zarcone v. Perry, 78 A.D.2d 70, 434 N.Y.S.2d 437, aff'd. 55 N.Y.2d 782, 447 N.Y.S.2d 248, 931 N.E.2d 974, cert. denied 456 U.S. 979, 102 S.Ct. 2248, 72 L.Ed.2d 855).

In determining whether a Police Officer Is acting under color of State Law, the nature of the act complained of Is controlling (See, Revere v. Charles county commrs., 4th cir., 882 F.2d 870).

Officer Tully or Interdonati (I'm not 100% sure which officer approached me because of the fabrication of the information documented on the MTA incident report and n.s.d. criminal complaint) approached me alone asking for consent to search my persons by expressing "Did I have drugs on me?") while acting under the color of state law as a MTA Police officer. When this officer called backup, His fellow officers assisted him by responding to the call and watching him falsely arrest me / physically assault me. These officers were acting under the color of the state as MTA Police officers when the plaintiff was deprived by them of His constitutional rights.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.     What date and approximate time did the events giving rise to your claim(s) occur?

Feb. 25, 2015 / after 12 am (Between 00:00 - 01:00)

D.     What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

-See Attached-

## V.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

-See Attached-

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

-See Attached-

Date: 1/16/
2017

Pg. 1 of 8

<u>Facts of the Incident</u>

On Feb. 25, 2015 I entered Penn Station around 11:40 PM and headed to the LIRR waiting area. A female friend from Montreal, a little after 11PM, had text me saying she was to the city via Jersey and wanted me to show her around town. At the time she text me, she told me her eta to Penn station was 1 AM. So when I arrived at Penn station, I figured I grab a bite to eat and hang out a little until she arrived. When I got to the LIRR waiting area, I immediately went to my favorite salad bar and ordered my preferred meal from that establishment (a salad and two meats special).

After I got done eating, standing up (its not a dine in restaurant), I headed pass the wireless accessories store to the restaurant next to it. I made a selection out of canned cold beverages that was in a freezer box (a makeshift box filled to the brim with ice with an assortment of non-alcoholic and alcoholic beverages) located in front of the register, and the cashier put my beverage in a brown paper bag with a straw. As I begun to consume my beverage, an older black man made a comment that Obama is not doing anything for the people and I rebutted his comment by stating the people is not doing anything for themselves. I further stated "Instead of wanting more assistant programs people need to work on obtaining grants to open up more businesses creating jobs for their community".

The older man just smiled at me and we discussed politics

For a half an hour or more. In the middle of our conversation I finished my beverage and bought another one from the freezer box (the cashier packaged it in the same way i brown paper bag and a straw). a little after that purchase, while discussing politics, a female with an European accent that was with friends approached me and asked if I was a rapper? While she asked the question, she informed her friends, go ahead she will catch up. Then after they (her friends) walked off I responded by saying "mainstream no but I am an artist, why do you ask?" She told me I reminded her of Snoop dogg and then she stated "you have that look".

I graciously thanked her and inquired about her reason for being in Penn station. She told me she lives in long island and is currently waiting on her train. She then asked me, what was my reason for being there? I informed her I was waiting on a female friend coming from Jersey via montreal. That made her blush then she asked me how did I get to penn station? which I informed her, I live 8 blocks away and walked. This intrigued this young lady and with a suprised expression on her face, she stated "you live in this area?" I was actually offended by her question and asked her "is that hard to believe, where you thought I stayed?" She responded "uptown" and we both laughed off the stereotypical perception she just expressed in the most innocent way. Then she asked, would I like to come to long island with her?

at that moment, I reminded her that the city is a very dangerous

place and inviting complete strangers to your residence is not such a good idea. She looked at me astonished and asked me "why dont you want to leave with me?" I reminded her that I was waiting

on a female friend that will be very disappointed if Im not waiting for her when she arrives and she in turn gave me a lustful look saying "please". Im use to females being cordial but a female being this brazen with a complete stranger at midnight after a few words, lead me to only one conclusion, she's intoxicated.

Even though she did not exhibit any characteristics of being drunk, such as loss of coordination or slurred speech, I asked her "if she was drunk." She informed me she wasn't and stated "why you dont want to leave with me?" I coyly stated "I dont want to disappoint you but I didn't bring out with me." She responded "oh gosh, money, I'll pay for your ticket come with me." I looked at her curiously and asked her "why you want me specifically to leave with you so bad?" I further stated seriously but playfully "your not trying to get me kidnapped or nothing, is you?" She then smiled at me lustfully again and stated "can I play with your locs (dreadlocks)?" I responded by saying "aint no harm in that go head," and she started stroking my locs passionately as she looked in my eyes saying "leave with me."

As this female was flirting with me, an officer approached us. He approached us in a very threatening manner, all red in the face, breathing heavily, and with a menacing stare. He immediately

Looked at me Intimidatingly and asked "do you have drugs on you?" I told the officer "I go to Bronx community college, Im not a drug dealer Sir, you can Search me If you dont believe me." My newly acquired Female companion Smiled at me Showing She approved at the way I responded to the officers. The officer then stated "we dont want you here, your a criminal Leave?" The Female I was with then stated "your a criminal, I cant bring a criminal to my house", and subsequently walked off telling me "good luck". Officer Interdonati then Smiled when She did this, and I quickly concluded that was his reason For this encounter.

After my Female Friend was no longer visible amongst the crowd of Passengers, officer Interdonati stated "you should leave to, If you know whats Best for you." I told officer Interdonati, "I dont want no problems officer, However Im waiting on a Female passenger From Jersey, once she arrives I will gladly leave." Officer Interdonati told me "your lying, I have been watching you For hours, your not waiting for a passenger." I Informed the officer "my Female Friend from Montreal just text me at 11:20pm telling me to meet her at Penn Station, the earliest I could of got here was 11:40 or 11:50 pm Sir." I then Stated "If you claim you were watching me the whole time, what suspicions arose from me talking to a Female Officer, because you only approached me then?" Officer Interdonati then said Ignoring my question "This IS LIRR waiting area, Jersey IS upstairs Leave".

I came to the conclusion that this officer was just abusing his authority at that moment and I decided to head upstairs to the Jersey transit waiting area to avoid conflict.

As I turned to leave, officer Interdonati then stated "what are you drinking?" I told officer Interdonati "Its a non-alcoholic beverage why?" Officer Interdonati, at that moment physically threatened me by saying "your a wiseguy huh, Im going to pull out your Fucking dreads?"

When officer Interdonati expressed the sentiment that he was going to pull out my Fucking dreads, calling me a wiseguy, I calmly explained to officer Interdonati that I have dreads because Im rastaferian, Im a college student, I have class tomorrow, and Im not understanding how pulling out someones dreads relates to your duties as law enforcement. Officer Interdonati responded by saying "I dont give a Fuck what you are, I could care less If your In school with government money, and Im pulling out your Fucking dreads!" I had my school binder In my left hand (Inside a plastic bag) and at that moment I dropped It feeling threatened. I then told officer Interdonati "that's criminal behavior, thats not legal, your not allowed to do that." Officer Interdonati responded by saying "I do what I want." at that moment, I told officer Interdonati "Im not guilty of any crime, If you arrest me Im not resisting, so I dont see how your going to accomplish this legally." Officer Interdonati stated "watch", calling backup over his police radio.

Once backup arrived, he snatched and discarded my canned cold beverage (that label was obscured by a brown paper bag) into a trash can next to me, without reading its label or inspecting the contents. Then officer Interdonati grabbed my left arm using it to slam my face and body into the ground. Once I was on the ground face down, officer Interdonati kneed me in the back causing unbearable pain, then handcuffed me. While I was on the ground, handcuffed, officer Interdonati walked around me shouting grabbing my dreads and kneeing me in my face simultaneously. At that moment, the far left side of my left eyebrow split open (I still have the scar where part of my eyebrow never grew back and I have medical records showing the injury is from this incident) bleeding profusely. After officer Interdonati accomplished kneeing me in my face, he climbed on top of me, and pulled my dreadlocks upward forcefully until one of my dreadlocks detached from my scalp. When he did this, he childishly stated "look you long hair bitch, I told you I was going to pull out your dreads." As he was saying that statement, he was on top of me, swinging my detached dreadlock back and forth in my face so I can see.

As officer Interdonati continued to exhibit this childish behavior, I reminded him the seriousness of his actions by stating "you forgot something officer." He responded by saying "no I didn't, I pulled out your dreads." Which in turn I stated "no you did, what I'm under arrest for?" At that moment he was no longer celebrating, he got up, lifted me to my feet, and escorted me to the precinct.

PG. 6 of 8

When I was brought into the holding cell area, I asked officer Interdonati a second time, what was the reason for my arrest? He ignored my question again and looked at me with a menacing glare.

PG. 7 of 8

When officer Interdonati didn't respond to my question a second time, I already knew I was arrested for no reason other than for him to pullout my dreads but I still decided to ask him again? The third time I asked officer Interdonati what I was under arrest for, he became infuriated, and slammed my face into the holding cell bars. At that moment, a small horizontal split opened up above my right eyebrow, causing more blood to trickle down my face. A couple minutes later, officer Interdonati's sergeant came into the holding cell area, and asked me my name? At that moment, I requested medical attention and was put in the holding cell.

As I waited to be transported to Bellevue, an MTA officer other than officer Interdonati (in the hallway in front of the holding cell area), waived my detached dread at me until he got my attention then kicked it bursting into laughter. I shook my head and waited for transportation. When I was transported to Bellevue for medical attention, the transportation officers didn't know what I was being charged with and was verbally abusive the entire time, the medical records will prove my allegations. I returned from Bellevue and was falsely charged with attempted disorderly conduct, attempted resisting arrest, and attempted public

Intoxication.

P3. 8 of 8

<u>Excessive Force</u>

**Constitutional Protections**

"The Fourth Amendment Protects Individuals from the government's use of excessive force when detaining or arresting individuals" (Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006).

**In evaluating use of force**

**pg. 1 of 4**

When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable in the light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation" Id. (Internal quotation marks and brackets omitted).

**Fourth amendment reasonableness Standard**

The Supreme court has held that: all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "Seizure" of a free citizen should be analyzed under the Fourth amendment and its "reasonableness" standard ... our Fourth amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it (Graham v. Connor, 490 U.S. 386, 395-96 (1989) (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).

Thus, In evaluating the reasonableness of an officer's use of force, a court should consider the specific circumstances of the case, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he/she is actively resisting arrest..." Id at 396; accord Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000).

pg. 2 of 4    The court noted that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements — In circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that Is necessary In a particular situation" (Id. at 396-97).

Facts of Incident establishing excessive force claim

When backup arrived on the scene, Officer Interdonati snatched and discarded my canned cold beverage (that label was obscured by a brown paper bag) Into a trash can next to me, without reading It's label or inspecting It's contents. After the discarding of the canned beverage, Officer Interdonati grabbed my left arm using It to slam my face and body Into the ground.

Once I was on the ground, face down, Officer Interdonati kneed me In my back causing unbearable pain and then handcuffed me while I was on the ground, handcuffed, Officer Interdonati walked around me crouching grabbing my dreads and kneeing me In my face simultaneously. At that moment, the far left side of my

Left eyebrow split open (I still have the scar where part of my eyebrow never grew back and I have included the medical records showing the injury is from this incident) bleeding profusely. after officer Interdonati accomplished Kneeing me In my face, he climbed on top of me, and pulled my dreadlocks upward forcefully until one of my dreadlocks detached from my scalp. after officer Interdonati ripped one of my dreadlocks from my scalp, I was brought Into the precinct.

pg. 3 of 4

Once I arrived In the holding area of the precinct, officer Interdonati slammed my face Into the holding cell bars for inquiring about the reason for my arrest. a horizontal split opened up above my right eyebrow as a result of getting my face slammed Into the holding cell bars.

Unreasonable-ness of Force Used

At the time I was arrested, I was never Instructed to put my hands behind my back. I was never Informed I was under arrest or was told what I was being arrested for. I never disobeyed an order this officer gave me, that caused him to use more force than necessary to effect my arrest nor did I physically attempt to prevent the officer from effecting the arrest. all the force used, after this officer discarded my canned cold beverage Into a trash can next to me, was unreasonable considering the cooperation of the Plaintiff and was unnecessary.

Instead of Instructing me that I was under arrest

and to put my hands behind my back, this officer slammed
my face into the ground. as I was on the ground, I threw
my hands behind my back so the officer can arrest me
but officer Interdonati chose to knee me in my back
before he even attempted to handcuff me. after I was
handcuffed, Instead of officer Interdonati lifting me up
off the ground and escorting me to the precinct. He chose
to knee me in my face and pull out one of my dreadlocks
before escorting me into the precinct. Once I arrived
in the precinct, Instead of this officer Informing me of
my charges, He slams my face into the holding cell bars for
Inquiring what I was being charged with? None of the
force this officer used was justified because of the
plaintiff's actions nor was his actions justified because
of the severity of the crime.

Pg. 4 of 4

Parties
Liable

① MTA  ② MTA P.O. Interdonati  ③ MTA P.O. Tolly

Type of claim
Federal/State

① Excessive force claim pursuant 42 U.S.C § 1983

## Equal protection claim

**Constitutional Protection**

**Pg. 1 of 7**

To make out a selective enforcement claim under the Equal Protection clause of the Fourteenth Amendment, a Plaintiff must show: "(1) [that] he was treated differently than others similarly situated and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (Five Borough Bicycle Club v. City of New York, 684 F. Supp. 2d 423, 438 (S.D.N.Y. 2010)(citing Freedom Holdings Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004))(internal quotations omitted); See also Leclair v. Saunders, 627 F.2d 606 (2d Cir. 1980).

**claim requirements**

Courts have required that "the level of similarity between [the] Plaintiff and the person with whom they compare themselves ... be extremely high" in all material respects. Id. at 439 (quoting Hoth v. Haslun, 628 F. Supp. 2d 425, 430 (S.D.N.Y. 2008)(internal quotations omitted)).

Furthermore, to succeed on an equal protection claim, a Plaintiff must show that "Defendants knew there were similarly situated individuals and consciously applied a different standard to Plaintiff." Id. (quoting Abel v. Morabito, No. 04-cv-7284 (PGG), 2009 WL 321007, at *4 (S.D.N.Y. Feb. 10, 2009)).

| | |
|---|---|
| Plantiff must Demonstrate Discrimination | Demonstrating that Plantiff was treated differently From "Similarly situated" Individuals Is the "S inc qua non of a Le clear 'selective enforcement' violation" (Doe v. village of Mamaroneck, 462 F. Supp, 2d 520, 555 (S.D.N.Y. 2006). |
| Pg. 2 of 7 | |
| Facts of Incident establishing claim | The Lirr waiting area In Penn Station IS an area that offer amenities such as dine-In restaurants, Fast food restaurants, bars, Kmart, and access to the New York city subway for the convenience of their passengers. Even though this area IS built to cater to the needs of Lirr passengers, It IS open to the general public. The officer that Initiated the police-citizen encounter on Feb. 25, 2015 that resulted In the Plantiff being arrested without Probable cause, assaulted, and subsequently arraigned on charges that was Filed because of False allegations on a criminal complaint; targeted the Plantiff based on the Plantiff's race and religion and the encounter was fuel by strong racial hatred against Interracial dating of couples especially Black men with dreads with white women.<br><br>    At the time the arresting officer Joseph Intesdanti approached the Plantiff, the arresting officer approached the Plantiff alone and the plantiff was engaged In conversation with a caucasian female with a European accent who stayed In long Island. The Plantiff determine that since the officer approached alone and no other officers responded, that officer Intesdancti Intended to harass the Plantiff, racial profiling the Plantiff which IS a common practice used by officers nationwide. |

NOW when officer Interdonati approached the Plantiff and the Female that was flirting with him by touching the Plantiff's dreadlocks, this officer approached in a very threatening manner with a menacing glare. The Officer at that moment Stated to the Plantiff "Do you have any drugs on you?" The Plantiff figured the officer's pretext for the encounter would be to stereotype him for being a drug dealer because he is a young black male male with dreadlocks conversing with a caucasian female. The Plantiff knew the officer wouldn't reveal the real reason for the encounter, which was the officer didn't condone in Interracial (esp. Black males with white a female) romantic encounters and would try his best to Intervene to prevent any type of relationship to manifest out of these type of situations. The conclusion was easy to reach because the officer's pretext was very transparent, the Plantiff nor the female that was flirting with the plantiff, made any hard movements or gestures that would indicate to an officer trained in narcotics that a drug deal was occurring; yet the plantiff was being approached for drugs absent of suspicious movement or activity.

When officer Interdonati used the pretext of questioning the Plantiff about drugs on his persons, even though that wasn't the real reason for the encounter, the Plantiff responded by informing the officer that he was a college student, does not have any drugs on his persons, and consents to a search to dispel the officers suspicions. This officer still not satisfied

with the results of the encounter because the female that flirted
with the plantiff was still by his side then stated "Leave your
not wanted here your a criminal". Even though this show of authorty
by the officer is irrational and show the officer was enforcing

**pg. 4 of 7** his own rules with the authority given to him by the city of
New York, the plantiff still stayed rational and explained his
reason for not complying with the officers's irrational request.
Even though at that moment, the female that flirted with the
plantiff walked off, which made the arresting officer smile.

The plantiff then explained to the officer that his purpose for
being in Penn Station is to wait on a female passenger coming
from New Jersey or the plantiff would of been left as the officer
requested (even though the officers's request was without justification
and very unreasonable because the plantiff didnt do anything to be forced
to leave Penn Station). The officer then accused the plantiff of lying,
stating "I've been watching you, you been here for hours, your not
waiting on a passenger." when plantiff informed the officer he was
in Penn Station for less than a hour, was waiting on a passenger,
and asked officer "Since you say you been watching me what
suspicion arose from talking to a female because you didnt approach
me until after I was approached by a female?" the officer ignored
the plantiff's question and told the plantiff again to leave. the
plantiff then attempted to avoid conflict and walk off, but at that
moment the officer decided to enforce the city's open container
law. At that time the officer's actions suggested to the plantiff

that the officer was trying to figure out a way to further harass

or harm the plaintiff for accepting the caucasian European Female's

advances. Since the plaintiff was approached by this Female and not

the other way around.

**PB. 50 F 7**          Now as the officer enforced the city's open container law,

he asked the plaintiff "What are you drinking?" when the plaintiff

responded by saying a non-alcoholic beverage; the officer didn't

require the plaintiff to remove the brown paper bag obscuring

the Label and its contents to verify that the plaintiff's response

was the truth. Instead the officer threatened the plaintiff that

he would physically assault him by pulling out his dreads.

The officer then called back up to enforce his criminal threat.

Officer Interdonati chose to selectively enforce the law against

the plaintiff by illegal detering the plaintiff to question him (at the

time the officer asked if plaintiff had drugs on his persons, no citizen

based on the officer's threatening demeanor would of felt free to disregard

the officer by walking away or choosing not to answer), using a show

of authority to force the plaintiff to leave without justification, and by

enforcing the city open container law. The plaintiff was targeted

because of the officer's own personal racial hatred towards interracial

romantic encounters and used his authority as law enforcement

to intervene in his attempt to prevent the situation from manifesting

into a relationship. This white male officer couldn't stand to see a

caucasian female flirt and be attracted to a young black male with

dreadlocks without intervening to prevent any relationship that would

manifest out of this situation. Even though the plaintiff didn't approach the female and the female approach the plaintiff. This officer intended to punish the plaintiff for talking to a female of the officer's same race. The plaintiff was drinking a

canned cold beverage the whole time he was in Long Island Railroad waiting area and the beverage's label and contents was obscured the entire time as the plaintiff consumed it. Yet the plaintiff was never approached by any officer as the plaintiff consumed his beverage in front of the restaurant. It was only after a caucasian female approached the plaintiff and started flirting with the plaintiff, that caused a racially motivated officer to approach plaintiff, accusing him of breaking laws because of the officer's own deep seated hatred against males of the black race being romantically involve with caucasian female.

New at the time the officer chose to selectively enforce the law against the plaintiff, there were citizens engaged in the same behavior that wasn't approached. There were citizens in the same area singing for money, panhandling, drinking beverages obscured by brown paper bags, engaged in conversations with other female citizens/passengers, citizens waiting until half an hour before their train's departure time to purchase a ticket, and waiting for passengers arriving via LIRR/NJ Transit/NYC subway system. However, these citizens were not harassed and neither was the plaintiff prior to engaging in conversation with a

Caucasian Female passenger. Its not against the law to engage In conversation with females of the opposite race and officers should not be allowed to Initiate encounters with citizens solely because of deep seated hatred toward Black males engaged In romantic encounters with females of the caucasian race using unsustified pretexts (reasons for Initial stop). This conduct violates the equal protection clause of the 14th amendment. This officer was aware of citizens engaged In the same behavior, worse behavior that would of resulted In arrest or summons, yet targeted the plaintiff because of deep seated racial hatred.

Pg. 7 of 7

Parties Liable

① MTA  ② MTA P.O. Interdonati  ③ MTA P.O. Tully

Type of claim Federal/State

① equal protection claim pursuant 42 U.S.C. § 1983

## Malicious abuse of process

| | |
|---|---|
| malicious abuse Standard | A defendant can be held liable for malicious abuse of process when he: |
| pg. 1 of 2 | (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) In order to obtain a collateral objective that is outside the legitimate ends of the process (Savino v. city of new york, 331 F.3d 63, 76 (2d cir. 2003). |
| Sufficient of claim | "To state a claim for abuse of criminal process, It is not sufficient for a plaintiff to allege that the defendents were seeking to retaliate against him by pursuing his arrest and Prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal Prosecution" (Savino v. city of new york, 331 F.3d 63) |
| Facts of Incident establishing claim | When I responded to officer Interdonati's inquiry enforcing the city's open container Law. He responded by threatening to physically assault me. When I him that what he Intended to do Is criminal behavior and not legal. He Informed me he does what he want. When I further Informed officer Interdonati Im not guilty of any crime, If he does arrest me I'm not going to resist, and I dont see how he Is going to legally justify his actions. He told me "watch" and called back up to enforce his criminal threat. Once backup arrived, I was physically assaulted. I was |

then brought to Bellevue Hospital center for my Injuries (medical records Included) and subsequently charged after that with resisting arrest and a open container violation.

At the time I was brought to Bellevue, officers did not even know what I was being charged with when I was brought for pre-arraignment Pyschiatric evaluation (Pg. 24 of 30/medical records of Incident). I was arrested without justification for the Purpose of being physically assaulted. Precedural due Process farbids the use of legal process for a wrongful purpose (see Torres V. Superintendent of Police, 893 F.2d 404). Then I was subsequently charged with criminal charges absent of Probable cause.

| Parties liable | ① MTA ② MTA P.O. Interdonatic ③ MTA P.O. Tully |

| Type of claim Federal/State | Malicious abuse of Process claim pursuant 12 U.S.C. § 1983 |

pg. 2 of 2

Malicious Prosecution

| | |
|---|---|
| Malicious Prosecution Standards | The elements of malicious prosecution under New York law are (1) that the defendant commenced a criminal proceeding against the plaintiff; (2) that the proceeding was terminated in plaintiff's favor (3) that there was no probable cause for the initiation or continuation of the proceeding; and (4) that the defendant acted |
| Pg.1 of 5 | with malice." (Ramos v. city of New York, 298 Fed. Appx. 84, 85 (2d cir 2008). |
| | "The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation [,] ... [t]he essence [of which] is the perversion of proper legal procedures" (Broughton v. State of New York, 37 Ny2d 451, 457 [1975], cert denied 423 U.S. 929 [1975]). |
| 42 U.S.C.A §1983 requires | To state a §1983 claim for malicious prosecution, a "plaintiff must allege the four elements of malicious prosecution under New York state law and the deprivation of a constitutional right. |
| Deprivation of a constitutional right | Under the fourth amendment, a warrantless arrest is constitutionally valid if the arresting officers had probable cause to make the arrest at the time of the arrest (see Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Gerstein v. Pugh, 420 U.S. 103, 111-12 (1974); Brinegar v. United States, 338 U.S. 160, 165 (1949)). |

I was deprived of this right when I was arrested without probable cause by an officer who subsequently falsified the facts of an incident to establish probable cause to initiate the prosecution of the plaintiff who was arraigned on Feb. 25, 2015 for the charges of Resisting arrest and consumption of alcohol in a

**Pg. 2 of 5**

public place. At the time the prosecution was initiated, a reasonably prudent officer would not have believed that plaintiff was guilty of the charges plaintiff was arraigned on based on the facts then known to the defendants, which was the video footage of the incident disproving the facts in the criminal complaint. Officer Interdonati Knowingly provided false information to the office of the District attorney, resulting in the plaintiff's prosecution. The prosecutor further deprived me of this right by commencing prosecution on facts known to the prosecutor to be false because of the readily available video footage of the incident maliciously prosecuting the plaintiff.

| | |
|---|---|
| complete to defense to malicious prosecution | "The "existence of probable cause to arrest is a complete defense" to claims for malicious prosecution and abuse of process (See, e.g., Savino v. city of New york, 331 F.3d 63, 72(2d cir. 2003). |
| absence of elements establishing claim | "Failure to establish any one of the four elements establishing malicious prosecution defeats the entire claim" (Brown v. Sears Roebuck and co., 297 A.D.2d 205, 208 [1st Dept 2002]). |

Facts of the Incident

**establishing**     ON Feb.25,2015 I was arrested by MTAPd officer Joseph

**malicious**     Interdonati without Probable cause. Officer Interdonati asked me

**Prosecution**    what I was drinking after informing me he wanted me to

leave the bus waiting area. When I informed officer Interdonati

that I was drinking a non-alcoholic beverage, he threatened

**pg.3 of 5**     to physically assault me by pulling out my dreadlocks. Then

he called backup to enforce his criminal threat.

     Once back up arrived, officer Interdonati snatched

my canned cold beverage that label and contents was

obscured by a brown paper bag out of my hand and discarded

it into a trash can next to me without inspecting the

label or the contents of the beverage. After he discarded

my beverage, officer Interdonati proceeded to arrest

me using unnecessary force. Subsequently after I was

arrested, officer Interdonati Knowing there was no Probable

cause for my arrest, falsified the criminal complaint by

stating I possessed a cup not a can that label and

contents was obscured by a brown paper bag and falsely

stated I resisted arrest to justify the force used.

     ON Feb.25,2015 I was arraigned on the charges

of resisting arrest and consumption of alcohol in a

public place. The area I was arrested had video surveillance

and all the false allegations on the criminal complaint

could have been disproven by watching the video footage

of the Incident.

However, the ADA that prosecuted my case maliciously prosecuted this case that was based on false allegations that could be disproven by the video footage of the incident and instead of dismissing the case, offered me community service. I informed my lawyer I'm not pleading guilty because I was arrested by the arresting officer because he wanted to physically assault me. My lawyer said she agrees we should take it to trial and ordered the medical records submitting it to the court.

My lawyer asked me for months did I have a cup. which confused me, so I inquired was that on the criminal complaint because I possessed a can that label and contents was obscured by a brown paper bag. I asked my lawyer to obtain the video of the incident but I was informed that either the ADA will dismiss the charges or will have to produce the footage of the incident at trial, when I refused to take the plea deal of community service, the ADA In the case in October stated either I take the plea deal or go to trial. I told my lawyer I'm not taking any plea deal and if the ADA takes it to trial, the video footage will disprove every allegation In the criminal complaint and will show the officer physically assaulted me without justification.

I was on for trial In November of 2015 but every appearance either there were no parts or the ADA witness were a no-show. after 18 months and over 17 court

Pg. 4 of 5

appearances after arreignment the ADA Finally dismissed the charges pursuant to CPL 160.50 In Favor of the Plaintiff On August 11,2016. Officer Interdonati Initiated Prosecution against Plaintiff without Probable cause and maliciously Provided the District atterney's office with False allegations In the Form of a criminal complaint to Serve as the basis For the charges Filed maliciously prosecuting the Plaintiff. The ADA commenced and continued Prosecution against the Plaintiff For 18 months even though the video Footage of the Incident would of disprove every allegation In the criminal complaint and the Plaintiff submitted medical records showing the OFFicer assaulted the Plaintiff. yet the ADA maliciously Prosecuted the Plaintiff For 18 months and 18 total court appearences) Dates.

Pg. 5 of 5

Parties liable

① MTA  ② The city OF New York  ③ MTA P.O. Interdonati

④ MTA P.O. Tully

Type of claim Federal/State

① malicious Prosecution claim pursuant to 42 U.S.C. 1983

False arrest claim

**False arrest claim**

Being in possession of an open container of alcohol in public is a violation of New York city administrative code § 10-125. This statue provides that: "No person shall ... possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place except at a block party, feast, or similar function for which a permit has been obtained." (ID § 10-125(b))[2]

**Pg. 1 of 5**

**Statue Guidelines**

The statue contains a presumption that "possession of an open container containing an alcoholic beverage by any person shall create a rebuttable presumption that such person did intend to consume the contents thereof in violation of this section" (ID. § 10-125(c)). This statue has been enforced by the New York courts, see, e.g., People v. Bothwell, 261 A.D.2d 232, 690 N.Y.S.2d 231 (1st Dept 1999), and a similarly-worded statue has been held constitutional (see People v. Elhage, 147 A.D.2d 911, 537 N.Y.S.2d 375 (4th Dept 1989). The carrying of an open can of beer or liquor bottle by itself creates sufficient probable cause under the terms of the statue.

**False arrest claim requirements**

My 1983 claim for false arrest derives from my Fourth amendment right to remain free from unreasonable seizures, which includes the right to remain free from an arrest absent of probable cause (Weyant v. Okst, 101 F.3d 845 (2d cir. 1996). An officer has probable cause to arrest when he or she has "knowledge or reasonable trustworthy

Information or facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime "(10; see also Dunaway v. New york, 442 u.s. 200 (1979). under New york Law, a police officer may arrest an individual when the officer has probable cause to believe that the individual has committed a petty offense, including a violation, in his presence and in his geographical area of employment (see new york criminal procedure Law § 140.10 (1)(a) ; § 1.20 (39)).

pg. 2 of 5

complete
Defense to
False arrest
claim

Under the fourth amendment, a warrantless arrest is constitutionally valid if the arresting officers had probable cause to make the arrest at the time of the arrest (see Beck v. Ohio, 379 u.s. 89, 91 (1964); see also Gerstein v. Pugh, 420 u.s. 103, 111-12 (1975); Brinegar v. United States, 338 u.s. 160, 165 (1949)). The existence of probable cause serves as a legal justification for an arrest and an affirmative defense to a false arrest claim (see Martinez v. city of Schenectady, 97 N.y.2d 78 (2001).

Lack of
probable cause

Lack of probable cause to arrest or prosecute is an essential element of false arrest (see Rivera v. city of new york, 40 A.D.3d 334 (2007)). Now once the officer detained the plaintiff after he enforced the city's open container law by asking the plaintiff "what are you drinking?" a terry stop had been conducted.

The Plaintiff is not disputing that the officer didn't have reasonable suspicion to conduct a terry stop. The Plaintiff was in possession of a can beverage that label and contents was obscured by a brown paper bag, which gave the officer reasonable suspicion that the Plaintiff might have been violating the New York city administrative code §10-125(b), which justifies the officer detaining the Plaintiff to ascertain whether it contained alcohol. Since Plaintiff is not disputing the canned beverage that label and contents was obscured by a brown paper bag was not closed, it was in fact open and Plaintiff was drinking from the can when the officer approached.

Pg. 3 of 5

However, once backup arrived, this officer snatched the canned beverage that label and contents was obscured by a brown paper bag out of the Plaintiff's hand and discarded it into a trash can next to Plaintiff without inspecting the label or its contents. At that moment, the seizure was no longer justified and the officer did not have probable cause to arrest the Plaintiff for violating the New York city administrative code §10-125(b). The Plaintiff did have an active warrant at the time of arrest but this information was not known to the officer at the time of arrest (Sprint report of incident will show no warrant check was conducted before arrest). This arrest was made with no probable cause and since this arrest was made without the arresting officer

conducting a warrant check before the arrest was made, the Plantiff was arrested without justification. Under New York law, a plantiff claiming false arrest must show, inter alia, that the defendent intentionally confined him

**P3.1085** without his consent and without justification (see,e.g., Broughton v. State of New york, 37 N.y. 2d 451).

**resisting arrest requirements**   Now In regards to the resisting arrest charge, Under New York Law, an essential element of the offense of resisting arrest is that the arrest allegebly resisted was "authorized" (N.y. Penal Law § 205.30 (Mckinney 1988)). To be "authorized" within the meaning of this section, an arrest must either have been made pursuant to a warrent or have been based on probable cause (see People v. alexander, 70 N.y.2d at 135,517 N.y.s.2d at 928,511 N.E.2d at 72)("It is an essential element of the crime of resisting arrest that the arrest be authorized and, absent proof that the arresting officer had a warrent or probable cause to arrest defendent for commision of some offense, a conviction cannot stand). Since the arrest was made without justification, the plantiff even if he was resisting, the arrest was not authorized. Since an authorized arrest is an essential element of resisting arrest, the arresting officer didn't have probable cause to charge Plantiff with the crime of resisting arrest.

Parties
Liable

① MTA   ② MTA P.O. Interdonati   ③ MTA P.O. Tully

Type of claim
Federal/State

① False arrest claim pursuant 42 U.S.C § 1983

Pg. 5 of 5

Failure to Protect

| | |
|---|---|
| claim/issue to Protect | Failure to Protect: Law enforcement has affirmative duty to Intercede on behalf of citizen whose constitutional rights are being Violated In his presence by other officers (42 U.S.C. A. §1983) |
| Pg. 1 of 2 | |
| constitutional right violated | "The Fourth amendment Protects Individuals from the government's use of excessive force when detaining or arresting Individuals" (Jones v. Parmley, 465 F.3d 46, 61 (2d cir. 2006). |
| Facts of Incident establishing Failure to Protect claim | Once Plaintiff was slammed to the floor by the arresting officer, Joseph Interdonato, without being Informed he was under arrest or without being Instructed to place his hands behind his back; any subsequent excessive force used after this point In the encounter Is also attributed to the officer's who failed to Protect the Plaintiff from further abuse. A Law enforcement officer has an affirmative duty to Intercede on the behalf of a citizen whose constitutional rights are being violated In his presence by other officers (See Byrd v. Clark, 783 F.2d 1002, 1007 (11th cir 1986)(excessive force); Webb v. Hiykel, 713 F.2d 405, 408 (8th cir. 1983) (excessive force)). |

Now Its unreasonable to hold the officer's that observed the Plaintiff being slammed, accountable for not protecting the Plaintiff at that moment because these officer's had no realistic opportunity to prevent this conduct from happening nor was there any way for these officers to anticipate this

conduct at that point from this officer.

However, once the plaintiff was slammed to ground for no reason (plaintiff was not resisting or instructed to place arms behind his back and disobeyed), these officers are responsible for any excessive force that subsequently occurred after the slam because they were alerted by this conduct that they needed to protect arrestee from further abuse (42 U.S.C.A. 1983; ONeill v. Krzeminski, 839 F.2d 9 (1988) (Police officer who failed to intercede was not liable for use of excessive force in connection with beating of arrestee by other officers but could be found liable with respect to subsequent dragging of arrestee across detention room floor; failure to intercede was not proximate cause of beating as blows were struck in such rapid succession that officer had no realistic opportunity to attempt to prevent them, but officer had been alerted by beating to need to protect arrestee from further abuse)).

P9. 2 OF 2

| Parties Liable | (1) MTA   (2) MTA P.O.'S Tully, Tirado, Torres, Interdonati |
| Type of claim Federal/State | (1) Failure to Protect claim pursuant 42 U.S.C. § 1983 |

─See Attached─

Pg. 5 of 11

V. Insuries

Insuries:

Mild depression of the anterior superior endplate of C5 vertebrel body by approximately 2mm (Pg. 8 of 30, MR), Facial abrasion on L Side of the Face (Pg. 3 of 30, MR), contusion L Side of Face (Pg. 5 of 30, MR), Facial trauma (Pg. 7 of 30, MR), Dreadlocks Pulled out (Pg. 21 of 30, MR), Facial Lacerations R Side of Face (Pg. 21 of 30, MR), verbal abuse (Pg. 21 of 30, MR)

MR = medical Records

—See Attached—

Pg. 5 of 11

VI. Relief

Relief:

① Compensatory damages — Im suing for $10,000,000 (10 million dollars) in compensatory damages against MTA, the city of New York, MTA P.O. Interdonati, MTA P.O. Tully, MTA P.O. Tirado, and MTA P.O. Torres.

② Punitive damages — Im suing for $8,000,000 (8 million dollars) in punitive damages against individual officers.

③ Injunctive Relief — Im also requesting injunctive relief against MTA that in the future (next couple of years) they will require and issue body cams to all officers while on duty to prevent falsified reports and criminal complaints.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    10/24/2017

| | |
|---|---|
| Signature of Plaintiff | Robert Lurch |
| Printed Name of Plaintiff | Robert Derek Lurch Sr |
| Prison Identification # | 16A 2468 |
| Prison Address | P.O. Box 2500 |
| | Marcy          NY     13403 |
| | *City*          *State*    *Zip Code* |

### B.   For Attorneys

Date of signing:    _____

| | |
|---|---|
| Signature of Attorney | _____ |
| Printed Name of Attorney | _____ |
| Bar Number | _____ |
| Name of Law Firm | _____ |
| Address | _____ |
| | _____ |
| | *City*          *State*    *Zip Code* |
| Telephone Number | _____ |
| E-mail Address | _____ |



neopost
10/26/2017
US POSTAGE $00



Pro se Intake Unit

United States District Court

Southern District of New York

500 Pearl Street

New York, NY

10007

Name: Robert Lorch DIN 16A5168

M.D. State Correctional Facility

P.O. Box 2500

Marcy, New York

13403

LEGAL MAIL